AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Stephen Bennett | ) | Case No. |
| | ) | |
| | ) | 21-mj-7102 |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

**ORIGINAL FILED**

MAY 14 2021

WILLIAM T WALSH CLERK

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ in the county of _____Camden_____ in the
_____ District of _____New Jersey_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 1349 | Conspiracy to Commit Bank and Wire Fraud |
| 18 USC 1344 | Bank Fraud |
| 18 USC 1956(h) | Conspiracy to Commit Money Laundering |
| | See Attachment A |

This criminal complaint is based on these facts:

See Attachment B

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Nicholas Henry, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   _____05/14/2021_____

_____
*Judge's signature*

City and state:   _____Camden, New Jersey_____   Karen M. Williams, U.S. Magistrate Judge
*Printed name and title*

CONTENTS APPROVED
UNITED STATES ATTORNEY

By: *[signature]*

Daniel A. Friedman
Jason M. Richardson
Assistant U.S. Attorneys

Date: May 13, 2021

**Attachment A**

<u>Count 1</u>
(Conspiracy to Commit Wire and Bank Fraud)

From in or about March 2020 through in or about August 2020, in Camden County, in the District of New Jersey, and elsewhere, the defendants,

RHONDA THOMAS, a/k/a "Rhonda Ware,"
STEPHEN BENNETT

did knowingly and intentionally conspire and agree with each other, Co-Conspirators 1 through 4, and with others, known and unknown, to devise a scheme and artifice to defraud the U.S. Small Business Administration ("SBA") and Lenders 1 thought 5, and to obtain money and property from the SBA by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice: (1) to cause to be transmitted by means of wire communications in interstate and foreign commerce, certain signs, signals, and sounds, contrary to Title 18, United States Code, Section 1343; and (2) to defraud a financial institution, Lender 1 through 5, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of Lender 1 through 5, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344, as described in Attachment B.

In violation of Title 18, United States Code Section 1349.

<u>Count 2</u>
(Bank Fraud)

On or about June 2, 2020, in the District of New Jersey, and elsewhere, defendant

STEPHEN BENNETT

did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud a financial institution, and aid and abet the scheme and artifice to defraud a financial institution, that was Lender-2, the deposits of which are insured by the Federal Deposit Insurance Corporation, to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control thereof, by means of false and fraudulent pretenses, representations and promises, namely the application for PPP funds.

In violation of Title 18, United States Code, Section 1344 and Title 18, United States Code, Section 2.

<u>Count 3</u>
(Conspiracy to Commit Money Laundering)

1.      From in or about April 2020 through in or about September 2020, in Camden County, in the District of New Jersey, and elsewhere, the defendants,

RHONDA THOMAS, a/k/a "Rhonda Ware,"
STEPHEN BENNETT

did knowingly conspire and agree with each other and with others to engage in a monetary transaction, namely, deposits, withdrawals, transfers and exchanges of United States currency and monetary instruments, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343 and bank fraud, in violation of Title 18, United States Code, Section 1344, contrary to Title 18, United States Code, Section 1957.

2.      It was part of the conspiracy that Defendants Rhonda Thomas, a/k/a "Rhonda Ware," Stephen Bennett or their Co-Conspirators submitted false and fraudulent loan application for PPP or EIDL loans.

3.      It was further part of the conspiracy that after the loans were funded and disbursed Defendants Rhonda Thomas, a/k/a "Rhonda Ware," Stephen Bennett or their Co-Conspirators transferred the fund through various accounts that they controlled.

4.      It was a further part of the conspiracy that Defendants Rhonda Thomas, a/k/a "Rhonda Ware," and Stephen Bennett caused, among others, the following monetary transactions affecting interstate and foreign commerce and involving proparty having been derived from bank and wire fraud:

a.      On June 14, 2020, Defendant Stephen Bennett signed a $38,000 check from his personal Navy Federal Credit Union ("FCU") bank checking account made payable to Defendant Rhonda Thomas with "Payroll – May 2020 June 2020" written in the memo line of the check.

b.      On June 16, 2020, the June 14, 2020 check was deposited into a Navy FCU account in the name of Defendant Rhonda Thomas.

c.      On June 15, 2020, Stephen Bennett signed a $40,000 check from his personal Navy FCU bank checking account made payable to 2 Kings Group with the word "Payroll" written in the memo line of the check.  On June

15, 2020, this check was deposited into a 2 Kings Group LLC Fulton Bank account that was controlled by Defendant Rhonda Thomas.

      d.    On June 15, 2020, Stephen Bennett signed a $20,000 check from his personal Navy FCU bank checking account, made payable to 2 Kings Group with the word "Payroll" written in the memo line of the check.  On June 15, 2020, this check was deposited into a 2 Kings Group LLC Bank of America account.  Defendant Rhonda Thomas was the sole authorized representative for the BOA account.

      e.    On June 15, 2020, Stephen Bennett signed a $20,000 check from his personal Navy FCU bank checking account made payable to Credit Diva with the word "Payroll" written in the memo line of the check.  On June 15, 2020, that check was deposited into a Credit Repair Diva LLC BOA account.  Defendant Rhonda Thomas was the sole authorized representative for BOA account.

      f.    On June 15, 2020, Defendant Stephen Bennett signed a $8,000 check from his personal Navy FCU bank checking account made payable to CC-1 with the word "Payroll" written in the memo line of the check.

      g.    On July 9, 2020, $48,000 was transferred from Defendant Stephen Bennett's Navy FCU to a Navy FCU account ending in the name of Defendant Rhonda Thomas.

      h.    On June 20, 2020, Defendant Rhonda Thomas purchased a 2017 BMW 440I Series 4 from Classic Auto Group located in Turnersville New Jersey for  $31,834.65 using cashier's checks drawn on her BOA account.

      i.    On July 13, 2020, Defendant Stephen Bennett purchased a 2007 BMW 6 Series at Dash Auto Gallery located in Newark, New Jersey for $15,590 in cash.

      j.    On June 22, 2020, Defendants Rhonda Thomas and Stephen Bennett purchased two Rolex watches for $42,800 using Visa debit card linked to Defendant Stephen Bennett's Navy FCU account and Defendant Rhonda Thomas's American Express Card.

In violation of Title 18, United States Code, Section 1956(h).

**ATTACHMENT B**

I, Nicholas Henry, am a Special Agent with the Federal Bureau of Investigation. I have knowledge of the facts set forth below as a result of my participation in this investigation as well as from my review of reports from, and discussions with, other law enforcement personnel. Where statements of others are related herein, they are related in substance and in part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

**OVERVIEW**

1.      Defendants Rhonda Thomas, a/k/a "Rhonda Ware," Stephen Bennett, and others, have devised and executed a scheme to fraudulently obtain multiple loans through federal government program(s) referred to as the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loans ("EIDL"). In addition, Stephen Bennett is being investigated for his role in fraudulently obtaining monies from the Pandemic Unemployment Assistance ("PUA") program.

**BACKGROUND OF FEDERAL COVID-19 RELIEF PROGRAMS**

**A. COVID-19 Business Loan Programs**

2.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

3.      In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition,

1

businesses applying for a PPP loan must provide documentation showing their payroll expenses.

4.      A PPP loan application must be processed by a participating financial institution (the lender).  If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

5.      PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (between eight to 24 weeks after receiving the proceeds) and uses at least 60% of the PPP loan proceeds on payroll expenses.

6.      The American Rescue Plan Act, signed into law on March 11, 2021 appropriated an additional $7.25 billion in PPP funding but did not extend the current application period, which ended March 31, 2021.

7.      Lenders 1 through 5, discussed below, were partipating financial institutions and were "financial institutions" within the meaning of Title 18, United States Code, Section 20.

8.      The EIDL program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

9.      The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

10.      In order to obtain an EIDL, a qualifying business must submit an application to the SBA, through an on-line portal, and provide information about its operations, such as the number of employees, gross revenues, and cost of goods sold in the 12-month period preceding the disaster.  The amount of the EIDL is determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods of the company.  The loan processor communicates with the applicant through emails to the email address provided by the applicant.  Decisions on the loans are emailed to the email address provided by the applicant.  If the loan is approved, the applicant digitally signs the loan document and copies of the loan documents are emailed

to the applicant or made available through the online portal. SBA directly issues any funds disbursed under an EIDL to the applicant company. A company may use EIDL funds for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If an applicant also obtains a loan under the PPP, the applicant company is prohibited from using EIDL funds for the same purpose as the PPP funds.

## B. COVID-19 Unemployment Insurance Programs

11.    Unemployment Insurance ("UI") is a state-federal program that provides monetary benefits to eligible lawful workers. Although state workforce agencies ("SWAs") administer their respective UI programs, they must do so in accordance with federal laws and regulations. UI payments (benefits) are intended to provide temporary financial assistance to lawful workers who are unemployed through no fault of their own. Each state sets its own additional requirements for eligibility, benefit amounts, and length of time benefits can be paid. Generally, UI weekly benefit amounts are based on a percentage of one's earnings over a base period. In the Commonwealth of Pennsylvania, the Unemployment Compensation Division of the Pennsylvania Department of Labor and Industry ("PA-DOL") administers the UI program.

12.    On March 18, 2020, the President signed the Families First Coronavirus Response Act ("FFCRA") into law. The FFCRA provides additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic. The CARES Act expands states' ability to provide UI for many workers impacted by COVID-19, including for workers who are not ordinarily eligible for UI benefits. The CARES Act established three new UI programs: Pandemic Unemployment Assistance ("PUA"); Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC").

13.    In general, PUA provides for up to 39 weeks of benefits to individuals who are self-employed, seeking part-time employment, or otherwise would not qualify for regular UI or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act. Coverage includes individuals who have exhausted all rights to regular unemployment compensation ("UC") or extended benefits under state or federal law or PEUC. Under the PUA provisions of the CARES Act, a person who is a business owner, self-employed worker, independent contractor, or gig worker can qualify for PUA benefits administered by PA-DOL if he/she previously performed such work in Pennsylvania and is unemployed,

3

partially unemployed, unable to work, or unavailable to work due to a COVID-19 related reason.  A PUA claimant must establish his/her eligibility for PUA benefits.  The claimant must provide his/her name, Social Security Number, and mailing address.  The claimant must also identify a qualifying occupational status and COVID-19 related reason for being out of work. The eligible timeframe to receive PUA is from weeks of unemployment beginning on or after January 27, 2020 through December 31, 2020. However, the American Rescue Plan Act extended the PUA program and benefits are available until the week ending September 4, 2021.

14.    The cost of PUA benefits is 100% federally funded.  The PUA program is administered through a voluntary agreement between states and the federal government; more specifically, the Department of Labor.

15.    FPUC provides individuals who are collecting regular UI, PEUC, PUA, and several other forms of UC with an additional $600 per week.  The eligible timeframe to receive PEUC was from weeks of unemployment beginning after the respective state had an established agreement with the federal government (at the earliest, April 5, 2020) through July 31, 2020.

16.    In general, PEUC is a temporary federal program that provides 13 additional weeks of benefits to qualified individuals.  This program is authorized under Section 2107 of the CARES Act of 2020.

17.    The Commonwealth of Pennsylvania, through Pennsylvania Department of Labor ("PA-DOL"), administers UI benefits ("UIBs") under PUA, FPUC, and PEUC. Thus, subject to certain eligibility requirements, a person who is unemployed, but who used to be employed by an employer in Pennsylvania, can apply to receive UIBs from the Commonwealth of Pennsylvania.  PA-DOL offers an online portal ("the Portal") through which applicants can apply for UIBs and other types of benefits.

18.    PA-DOL offers UI claimants multiple ways to receive their benefits, including direct deposit, paper checks, and debit cards issued by US Bank.  When a claimant selects to receive a debit card, the physical card is mailed to the mailing address in the UI application.  PA DOL then transfers benefit funds to a US Bank account linked to the card on a weekly basis for as long as the claimant continues to log on to the Portal and certify that he/she remains eligible for UIBs.

4

## SUBJECT INDIVIDUALS AND SUBJECT ENTITIES

### A. Subject Individuals

19.     Defendant Rhonda Thomas, a/k/a "Rhonda Ware," resides at an address in Sicklerville, New Jersey.  Defendant Rhonda Thomas has received approximately $274,130 in PPP and EIDL funds directly from SBA and participating lenders as the reported owner of several businesses.  Additionally, Defendant Rhonda Thomas has received approximately $310,750 in PPP and EIDL funds that were paid to businesses with other owners.  There is probable cause to believe that these funds received from other businesses were kickbacks for her role in this scheme to fraudulently obtain PPP and EIDL loans.

20.     Defendant Stephen Bennett resides at addresses in Berlin, New Jersey and Philadelphia, Pennsylvania and has received approximately $510,000 as a result of fraudulent PPP and EIDL applications submitted on behalf of Prime Asset Consulting LLC.  In addition, the investigation has determined that Stephen Bennett submitted fraudulent PUA applications, using other individuals' names, to the Commonwealth of Pennsylvania, and collected approximately $412,000.

21.     Co-Conspirator-1 (hereinafter "CC-1"), who was a co-conspirator but not named as a defendant herein, was a resident of Berlin, New Jersey.

22.     Co-Conspirator-2 (hereinafter "CC-2"), who was a co-conspirator but not named as a defendant herein, was a resident of Willingboro, New Jersey.

23.     Co-Conspirator-3 (hereinafter "CC-3"), who was a co-conspirator but not named as a defendant herein, was a resident of Pennsauken, New Jersey.

24.     Co-Conspirator-4 (hereinafter "CC-4"), who was a co-conspirator but not named as a defendant herein, was a resident of Philadelphia, Pennsylvania.

### B. Subject Entities

#### a. Prime Asset Consulting

25.     Prime Asset Consulting LLC ("Prime Asset") is a New Jersey corporation.  Public records list Defendant Stephen Bennett and Individual-2 as members/managers.  Defendant Stephen Bennett's address in Berlin, New Jersey was listed as Prime Asset's business address on PPP and EIDL

5

applications. As detailed in this affidavit, Prime Asset applied for and received a PPP loan in the amount of $360,000 and an EIDL loan of $150,000 based on false information provided by Defendants Stephen Bennett and Rhonda Thomas.

### b. Rich Bloodline Entertainment

26.     Rich Bloodline Entertainment LLC ("Rich Bloodline") is a New Jersey corporation. Public records list CC-1 as the managing member. Defendant Stephen Bennett's address in Berlin, New Jersey was listed as Rich Bloodline's business address on PPP and EIDL applications. As detailed in this affidavit, Rich Bloodline applied for a $150,000 EIDL loan and a $720,000 PPP loan. The PPP loan was initially approved but funds were not disbursed because the lender discovered that identical bank statements were submitted for Rich Bloodline and Prime Asset loans with only account names and account numbers changed. The EIDL loan was not funded.

### c. 2 Kings Group

27.     2 Kings Group LLC ("2 Kings") is a New Jersey corporation. Public records list Defendant Rhonda Thomas as the managing member. Defendant Rhonda Thomas' home address was listed as 2 Kings' business address on PPP and EIDL applications. As detailed in this affidavit, 2 Kings applied for and received a PPP loan in the amount of approximately $20,265 and an EIDL loan of approximately $32,000 based on false information provided by Defendant Rhonda Thomas.

### d. Credit Repair Diva a.k.a Credit Diva

28.     Credit Repair Diva ("Credit Repair") LLC is a New Jersey corporation. Public records list Rhonda Ware as the business representative. Defendant Rhonda Thomas' home address is listed as Credit Repair's business address on PPP and EIDL applications. As detailed in this affidavit, Credit Repair received a PPP loan in the amount of approximately $19,243 and an EIDL loan of approximately $9,500 based on false information provided by Defendant Rhonda Thomas.

### e. Partners For A Purpose

29.     Partners For A Purpose ("Partners") is a New Jersey corporation. Public records list Defendant Rhonda Thomas as the sole managing member. Defendant Rhonda Thomas' home address is listed as Partners' business address on PPP and EIDL applications. As detailed in this affidavit, Partners received a PPP loan in the amount of approximately $22,657 and an EIDL loan

of approximately $150,000 based on false information provided by Defendant Rhonda Thomas.

### f. ABC Grow With Me Grow Learning Center

30.     ABC Grow With Me Learning Center LLC ("ABC") is a New Jersey corporation.  Public records list Defendant Rhonda Thomas as the sole managing member.  Defendant Rhonda Thomas' home address is listed as ABC's business address on a PPP application.  As detailed in this affidavit, ABC received a PPP loan in the amount of approximately $20,285 based on false information provided by Defendant Rhonda Thomas.

### g. Kings Lounge

31.     Kings Lounge LLC ("Kings Lounge") is a New Jersey corporation. Public records list Defendant Rhonda Thomas as 100% owner.  Defendant Rhonda Thomas' home address is listed as Kings Lounge's business address on a PPP application.  As detailed in this affidavit, Defendant Rhonda Thomas provided false information on an application for a $204,175 PPP loan.  The loan was not funded because the lender discovered irregularities in the bank statements submitted as part of the application.

### h. All Dolled Up Beauty Bar

32.     All Dolled Up Beauty Bar LLC ("All Dolled Up") is a New Jersey corporation.  Public records list Defendant Rhonda Thomas as the managing member.  Defendant Rhonda Thomas' home address is listed as All Dolled Up's business address on a PPP application.  As detailed in this affidavit, Defendant Rhonda Thomas provided false information on an application for a $18,759 PPP loan, which was denied.

### i. Aplus Property Maintenance

33.     Aplus Property Maintenance LLC ("Aplus") is a New Jersey corporation.  Public records list Individual-1 as a member of Aplus and Rhonda Thomas was identified as a 40% owner on an Aplus PPP application.  Subject Premises 3 is listed as Aplus's business address on a PPP application.  As detailed in this affidavit, Defendant Rhonda Thomas provided false information on an application for a $40,000 PPP loan, which was denied.

### j. Business #1

34.     Business #1 is a New Jersey corporation.  Public records list CC-2 as the sole managing member.  As detailed in this affidavit, there is probable

cause to believe that Defendant Rhonda Thomas assisted with the submission of false information on a PPP loan application; as a result, Business #1 received a PPP loan in the amount of approximately $362,500.

### k. Business #2

35.     Business #2 is a New Jersey corporation.  Public records list CC-3, as the sole managing member.  As detailed in this affidavit, there is probable cause to believe that Rhonda Thomas assisted with the submission of false information on PPP and EIDL loan applications; as a result, Business #2 received a PPP loan in the amount of approximately $41,040 and an EIDL loan of approximately $109,300.

### l. Business #3

36.     Business #3 is a Pennsylvania corporation.  Public records list CC-4, as the sole managing member.  As detailed in this affidavit, there is probable cause to believe that Defendant Rhonda Thomas assisted with the submission of false information on a PPP loan application; as a result, Business #3 received a PPP loan in the amount of approximately $125,000.

## PROBABLE CAUSE

### A. Fraudulent PPP and EIDL Loans

#### a. Application-1

37.     On May 29, 2020, Defendant Stephen Bennett applied for a PPP loan ("Application-1") from a participating financial institution ("Lender-1"), on behalf of Prime Asset Consulting ("Prime Asset") seeking approximately $360,000.  Application-1 identified Defendant Stephen Bennett as 98% owner of Prime Asset and stated that Prime Asset had 16 employees.

38.     As part of Application-1, a Navy Federal Credit Union ("Navy FCU") bank account statement in the name of, Prime Asset Consulting, , including checking account number ending in 1770 and savings account number ending in 1358, was submitted.  The statement date was from April 25, 2020 through May 24, 2020.  The investigation has revealed that bank account numbers ending in 1770 and 1358 were personal Navy FCU bank account numbers in the name of Defendant Stephen Bennett with in Berlin, New Jersey and not business accounts for Prime Asset.  The font used for the Prime Asset Consulting name and address on the Navy FCU bank statement submitted with the application was different than personal bank account statement.

39.     On May 30, 2020 at 3:51:45 p.m. UTC, one of Defendant Stephen Bennett's email accounts sent an email to one of Defendant Rhonda Thomas' email accounts attaching Defendant Stephen Bennett's personal Navy FCU bank statement for the period April 24, 2020 through May 24, 2020.

40.     On May 31, 2020 at 12:06:21 a.m. UTC, Defendant Rhonda Thomas responded to Defendant Stephen Bennett's email attaching a document appearing identical to Defendant Stephen Bennett's personal Navy FCU bank statement except that the name was altered from "Stephen K Bennett" to "Prime Asset Consulting" and the address was altered from "59 Adams Ave" to "59 Adams Ave Ste B").

41.     Additionally, a 2019 Form 940, Employers Annual Federal Unemployment ("FUTA") Tax Return, in the name of Prime Asset Consulting, was submitted with the application.  The total payments paid to all employees was reported to be $1,728,000.  Defendant Stephen Bennett signed the Form 940 as the Chief Executive Officer ("CEO").

42.     According to federal tax records obtained from the Internal Revenue Service ("IRS"), the IRS has no record of a 2019 Form 940 having been filed for Prime Asset.  Furthermore, the IRS has no record of any federal tax records having been filed for Prime Asset for the years 2018 through 2020 and has no record of any federal tax related records having been filed for Defendant Stephen Bennett for the years 2018 through 2020.

43.     Information obtained from the Social Security Administration ("SSA") revealed that Prime Asset reported no wages paid for the period between 2017 and 2019.  In addition, a review of the New Jersey Division of Revenue record system revealed that Prime Asset is not found in the system as ever paying wages; no employee wages were reported in 2018, 2019 nor the first two quarters of 2020.  Accordingly, there is probable cause to believe that the employee and wage information provided as part of Application-1 (and Application-2 and Application-3, as detailed below) was fraudulent.

44.     On June 2, 2020, Application-1 was declined by Lender-1 for credit reasons.

### b. Application-2

45.     On June 2, 2020, Defendant Stephen Bennett applied for a PPP loan ("Application-2") from a participating financial institution ("Lender-2"), on behalf of Prime Asset.  Application-2 identified Defendant Stephen Bennett as 100% owner of Prime Asset.  Application-2 indicated that Prime Asset had 16 employees with a average monthly payroll of $144,000 and stated that the

9

purpose of the PPP loan was for the business's payroll and lease expenses. Defendant Stephen Bennett signed Application-2 as "Owner."

46.    The same altered Navy FCU bank statements that were provided as part of Application-1 were submitted as part of Application-2. Application-2 also included the same purported 2019 year tax Form 940 for Prime Asset that was submitted as part of Application-1.

47.    On June 8, 2020, Application-2 was approved and Lender-2 disbursed $360,000 in PPP loan funds to Prime Asset ("Loan-1"). The loan amount was disbursed to Defendant Stephen Bennett's personal Navy FCU bank checking account, ending in 1770.

48.    On June 14, 2020, Defendant Stephen Bennett signed a $38,000 check from his personal Navy FCU bank checking account made payable to Defendant Rhonda Thomas with "Payroll – May 2020 June 2020" written in the memo line of the check. On June 16, 2020, this check was deposited into a Navy FCU account ending in 8763 in the name of Defendant Rhonda Thomas.

49.    On June 15, 2020, Defendant Stephen Bennett signed a $40,000 check from his personal Navy FCU bank checking account made payable to 2 Kings Group with the word "Payroll" written in the memo line of the check. On June 15, 2020, this check was deposited into a 2 Kings Group LLC Fulton Bank account ending in 8596 that is controlled by Defendant Rhonda Thomas.

50.    On June 15, 2020, Defendant Stephen Bennett signed a $20,000 check from his personal Navy FCU bank checking account, made payable to 2 Kings Group with the word "Payroll" written in the memo line of the check. On June 15, 2020, this check was deposited into a 2 Kings Group LLC Bank of America ("BOA") account ending in 1861. Defendant Rhonda Thomas is the sole authorized representative for the BOA account ending in 1861.

51.    On June 15, 2020, Defendant Stephen Bennett signed a $20,000 check from his personal Navy FCU bank checking account made payable to Credit Diva with the word "Payroll" written in the memo line of the check. On June 15, 2020, this check was deposited into a Credit Repair Diva LLC BOA account ending in 1816. Defendant Rhonda Thomas is identified as the sole authorized representative for BOA account ending in 1816.

52.    On June 15, 2020, Defendant Stephen Bennett signed a $8,000 check from his personal Navy FCU bank checking account made payable to CC-1 with the word "Payroll" written in the memo line of the check.

10

### c. Application-3

53.     On June 18, 2020, Defendant Stephen Bennett applied for a EIDL loan ("Application-3") from the SBA on behalf of Prime Asset.  Application-3 identified Defendant Stephen Bennett as 100% owner of Prime Asset. Application-3 indicated Prime Asset had 16 employees, gross revenues of $1,728,000 for the 12-months prior to the disaster, and cost of goods sold of $400,000 for the 12-months prior to the disaster.

54.     According to SBA records, Application-3 was submitted using Internet Protocol ("IP") address 50.239.187.214.  IP address 50.239.187.214 was subscribed to by the Courtyard by Marriott hotel ("Hotel-1) located in Woodbury, New Jersey 08096 from January 9, 2019 through at least December 16, 2020.

55.     Records obtained from Hotel-1 reflect that Defendant Rhonda Thomas was registered at Hotel-1 at the time Application-3 was submitted. Defendant Rhonda Thomas was a registered guest at Hotel-1 from June 8, 2020 through July 2, 2020; from July 17, 2020 through July 20, 2020; and from July 28, 2020 through July 29, 2020.

56.     On June 29, 2020, Application-3 was approved and SBA disbursed $150,000 in EIDL funds to Defendant Stephen Bennett's personal Navy FCU checking account ending in 1770 on July 1, 2020 ("Loan-2").

57.     The Loan-2 proceeds were transferred from Navy FCU account 1770 to Defendant Stephen Bennett's personal Navy FCU savings account ending in 1358.  The Navy FCU bank statements for accounts 1770 and 1358 have a mailing address of Defendant Stephen Bennett's address in Berlin, New Jersey. On July 9, 2020, $48,000 was transferred from account 1358 to a Navy FCU account ending in 8763 in the name of Defendant Rhonda Thomas.

58.     An analysis of statements for Navy FCU account 1770 where Loan-1 and Loan-2 were disbursed reveals that the loan proceeds not only were distributed to Defendant Rhonda Thomas and CC-1, but also were spent at a jewelry store, Gucci, Jimmy Choo, a car dealership, and night clubs.

59.     According to an invoice from a jewelry store in Miami Florida, on June 22, 2020, two Rolex watches were sold to Defendant Stephen Bennett and Defendant Rhonda Thomas.  The total invoice amount was $42,800.  The invoice was paid from a Visa debit card ending in 1076 for the amount of $37,450 and an American Express Card ending in 4691 for the amount of $5,350.  The investigation identified that the Visa debit card ending in 1076 is a debit card in the name of Defendnat Stephen Bennett associated with the Navy

11

FCU checking account ending in 1770.  The American Express card, ending in 4691 is in the name of Defendant Rhonda Thomas.

### d. Application-4

60.    On June 13, 2020, CC-1 applied for a PPP loan ("Application-4") from a participating financial institution Lender-1, on behalf of Rich Bloodline. Application-4 lists CC-1 as the 100% owner of Rich Bloodline.

61.    Application-4 indicated that Rich Bloodline had 32 employees.

62.    The same altered Navy FCU bank statements that were provided as part of Application-1 and Application-2 were also submitted as part of Application-4.  A 2019 Form 940, Employers Annual Federal Unemployment (FUTA) Tax Return, in the name of Rich Bloodline Entertainment, was submitted with Application-4.  The total payments paid to all employees was reported to be $3,456,000.  Defendant Stephen Bennett signed the Form 940 as Management.

63.    Application-4 was approved in the amount of $720,000 but the money was never disbursed.  Lender-1 submitted the loan file for fraud review after it discovered that identical Navy FCU banks statement were submitted for both Rich Bloodline and Prime Asset.

### e. Application-5

64.    On June 26, 2020, CC-1 applied for an EIDL loan ("Application-5") from the SBA on behalf of Rich Bloodline.  Application-5 lists CC-1 as the 98% owner of Rich Bloodline.  Additionally, Application-5 included a Certificate of Formation for Rich Bloodline that lists CC-1 as member/manager and authorized representative.

65.    Account information reveals that the email account used for Rich Bloodline was created using Hotel-1's IP address 50.239.187.214 on June 24, 2020, during the time when Defendant Rhonda Thomas was a registered guest.

66.    Application-5 indicated Rich Bloodline had 12 employees, gross revenues of $720,000 for the 12 months prior to the disaster, and cost of goods sold of $140,009 for the 12 months prior to the disaster.  Furthermore, the application stated that Rich Bloodline was formed on March 07, 2017.

67.    On July 10, 2020, SBA sent a letter to CC-1 notifying him that Application-5 was declined due to unverifiable information.

68.    The investigation has revealed that information submitted by CC-1 on Application-5 to SBA was fraudulent.  Public records record Rich Bloodline's incorporation date as July 9, 2020.

69.    Further, records obtained from SSA indicate that Rich Bloodline reported no wages for the periods between 2018 and 2019.  In addition, IRS records show Rich Bloodline was established in June 2020 and did not file any federal tax returns in 2018 and 2019.

### f. Application-6

70.    On April 15, 2020, Defendant Rhonda Thomas applied for a PPP loan ("Application-6") from participating financial institution ("Lender-3") on behalf of 2 Kings Group, LLC ("2 Kings").  The contact information for Application-6 was Defendant Rhonda Thomas, with a home address in Concord, North Carolina.  Application-6 identified Defendant Rhonda Thomas as the 100% owner of 2 Kings.

71.    Application-6 indicated that 2 Kings had one employee and an average monthly payroll of $8,333.  The stated purpose of the loan was for payroll, lease/mortgage interest and utilities.  Defendant Rhonda Thomas certified that 1) "The applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Forms(s) 1099-MISC" and 2) "The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under the paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposed, the federal government may hold me legally liable, such as for such charges as fraud."  Defendant Rhonda Thomas electronically signed her name certifying the application.

72.    Application-6 also included a purported 2019 Form Schedule C, Profit or Loss From Business identifying Defendant Rhonda Thomas as the proprietor.   The Form Schedule C listed $125,000 in income from gross receipts or sales.

73.    Application-6 was approved and Lender-3 disbursed approximately $20,265 in PPP loan funds to 2 Kings ("Loan-3").  On May 1, 2020, the loan amount was disbursed to a Bank of America ("BOA") business checking account ending in 1861 in the name of 2 Kings.  Defendant Rhonda Thomas is the sole authorized representative for BOA account ending in 1861.

13

### g. Application-7

74.     On April 5, 2020, Defendant Rhonda Thomas applied for an EIDL loan ("Application-7") from the SBA on behalf of 2 Kings.  The name on Application-7 was Defendant Rhonda Thomas and the home and businesses address was Subject Premises 3.  Defendant Rhonda Thomas was identified as the 100% owner of 2 Kings.

75.     Application-7 stated that 2 Kings had 3 employees, gross revenues of $90,000 for the 12 months prior to the disaster, and cost of goods sold of $20,000 for the 12 months prior to the disaster.

76.     On June 12, 2020, Application-7 was approved ("Loan-4").  On June 15, 2020, SBA disbursed approximately $31,900 in EIDL funds to a Fulton Bank checking account in the name of 2 Kings, ending in 8596.

77.     The investigation has revealed that the employee information submitted by Defendant Rhonda Thomas to Lender-3 for Application-6 and to SBA for Application-7, was fraudulent.  SSA and IRS records show that 2 Kings reported paying no wages for the periods between 2018 and 2020.  In addition, IRS records show that Defendant Rhonda Thomas did not file a tax return or Schedule C reporting wages earned for the tax years 2018 and 2019.  Further, a SSA Summary Earnings Records Query of Defendant Rhonda Thomas from January 21, 2021 revealed that Defendant Rhonda Thomas had no reported earnings posted after 2016.

### h. Application-8

78.     On April 27, 2020, Defendant Rhonda Thomas applied for a PPP loan ("Application-8") from a participating financial institution ("Lender-3") on behalf of Credit Repair Diva LLC ("Credit Repair").  The name on Application-8 was Defendant Rhonda Thomas.  Defendant Rhonda Thomas was identified as the 100% owner of Credit Repair.

79.     Application-8 stated that Credit Repair had one employee and an average monthly payroll of $8,000.  The stated purpose of the loan was for payroll.  Defendant Rhonda Thomas certified that 1) "The applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Forms(s) 1099-MISC" and 2) "The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under the paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposed, the federal government

14

may hold me legally liable, such as for such charges as fraud." Defendant Rhonda Thomas electronically signed her name certifying the application.

80.    Application-8 also included a purported 2019 Form Schedule C, Profit or Loss From Business, identifying Defendant Rhonda Thomas as the proprietor.  The Form Schedule C listed $114,023 in income from gross receipts or sales.

81.    Application-8 was approved ("Loan-5") and on May 6, 2020, Lender-3 disbursed approximately $19,243 in PPP loan funds to a Credit Diva Bank of America ("BOA") checking account ending in 1816.  Defendant Rhonda Thomas is identified as the sole authorized representative for BOA account ending in 1816.

### i. Application-9

82.    On March 31, 2020, Defendant Rhonda Thomas applied for an EIDL loan ("Application-9") from the SBA on behalf of Credit Diva.  The name on Application-9 was Defendant Rhonda Thomas and the home address and business address were Subject Premises 3.  Defendant Rhonda Thomas was identified as the 100% owner of Credit Diva.

83.    Application-9 stated that Credit Diva had 2 employees, gross revenues of $65,000 for the 12 months prior to the disaster, and cost of goods sold of $42,000 for the 12 months prior to the disaster.

84.    On June 4, 2020, Application-9 was approved ("Loan-6") and on June 9, 2020, SBA disbursed approximately $9,500 in EIDL funds to Credit Diva Bank of America account ending in 1816 ("Loan-6").

85.    The investigation has revealed that the employee information submitted by Defendant Rhonda Thomas to Lender-3 for Application-8, and to SBA for Application-9, was fraudulent.  SSA and IRS records show that Credit Diva reported paying no wages for the periods between 2018 and 2020.  In addition, IRS records show that Defendant Rhonda Thomas did not file a tax return or Schedule C reporting wages earned for the tax years 2018 and 2019. Further, a SSA Summary Earnings Records Query of Defendant Rhonda Thomas from January 21, 2021 revealed that Defendant Rhonda Thomas had no reported earnings posted after 2016.

### j. Application-10

86.    On April 30, 2020, Defendant Rhonda Thomas applied for a PPP loan ("Application-10") from a participating financial institution ("Lender-4") on

behalf of Partners For A Purpose ("Partners").  The name on Application-10 was Defendant Rhonda Thomas.  Defendant Rhonda Thomas was identified as the 100% owner of Partners.

87.    Application-10 stated that Partners had one employee and an average monthly payroll of $9,063.  The stated purpose of the loan was for payroll, lease/mortgage interest, and utilities.  Defendant Rhonda Thomas certified that 1) "The applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Forms(s) 1099-MISC" and 2) "The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under the paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposed, the federal government may hold me legally liable, such as for such charges as fraud."  Defendant Rhonda Thomas electronically signed her name certifying the application.

88.    Application-10 also included a purported 2019 Form Schedule C, Profit or Loss From Business, identifying Defendant Rhonda Thomas as the proprietor.    The Form Schedule C listed $370,000 in income from gross receipts or sales.

89.    Application-10 also included a 2019 Form 1099-MISC, Miscellaneous Income, from All Season Property Maintenance LLC to Partners. The reported nonemployee compensation from All Season Property Maintenance LLC to Partners was $370,000.  Individual-1, whom Defendant Rhonda Thomas stated, on an application for SSA disability, that she married on or about October 13, 2016, is listed as the sole managing member of All Season Property Maintenance LLC.

90.    In addition, three 2019 Forms 1099-MISC were submitted indicating that Partners paid nonemployee compensation to three individuals in the amount of $240,000.

91.    Application-10 was approved ("Loan-7") and on May 5, 2020, Lender-5 disbursed approximately $22,657 in PPP loan funds to Defendant Rhonda Thomas's personal Navy FCU bank account ending in 8763.

### k. Application-11

92.    On June 16, 2020, Defendant Rhonda Thomas applied for an EIDL loan ("Application-11") from the SBA on behalf of Partners.  The name on Application-11 was Defendant Rhonda Thomas.  Defendant Rhonda Thomas was identified as the 100% owner of Partners.

93.     Application-11 stated that Partners had 15 employees, gross revenues of $580,000 for the 12 months prior to the disaster, and cost of goods sold of $42,000 for the 12 months prior to the disaster.

94.     On June 16, 2020, Defendant Rhonda Thomas signed Application-11 under penalty of perjury and submitted Application-11 using Hotel 1's IP Address 50.239.187.214 on a date when she was a registered guest of Hotel 1.

95.     On June 18, 2020, Application-11 was approved ("Loan-8"). On June 22, 2020, SBA disbursed approximately $149,900 in EIDL funds to Fulton Bank checking account ending in 5226, in the name of Partners. Defendant Rhonda Thomas is a signatory on account 5226.

96.     The investigation has revealed that the employee information submitted by Thomas to Lender-4 for Application-10, and to SBA for Application-11, was fraudulent. SSA and IRS records show that Partners reported paying no wages for the periods between 2018 and 2020. Further, IRS records show that Defendant Rhonda Thomas did not file a tax return or Schedule C reporting wages earned for the tax years 2018 and 2019. Further, a SSA Summary Earnings Records Query of Defendant Rhonda Thomas from January 21, 2021 revealed that Defendant Rhonda Thomas had no reported earnings posted after 2016.

### l.  Application-12

97.     On May 20, 2020, Defendant Rhonda Thomas applied for a PPP loan ("Application-12") from a participating financial institution ("Lender-1") on behalf of ABC Grow With Me Learning Center ("ABC"). The name on Application-12 was Defendant Rhonda Thomas. Defendant Rhonda Thomas was identified as the 100% owner of ABC.

98.     Application-12 stated that ABC had one employee and an average monthly payroll of $8,114. The stated purpose of the loan was for payroll. Defendant Rhonda Thomas certified that 1) "The applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Forms(s) 1099-MISC" and 2) "The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under the paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposed, the federal government may hold me legally liable, such as for such charges as fraud." Defendant Rhonda Thomas electronically signed her name certifying the application.

17

99.    Application-12 also included a purported 2019 Form Schedule C, Profit or Loss From Business, identifying Defendant Rhonda Thomas as the proprietor.  The Form Schedule C listed $125,000 in income from gross receipts or sales.

100.    Application-12 included a 2019 Form 1099-MISC, Miscellaneous Income, from All Season Property Maintenance LLC to ABC.  The reported nonemployee compensation from All Season Property Maintenance LLC to Partners was $125,000.

101.    Application-12 was approved ("Loan-9") and on May 22, 2020, Lender-1 disbursed approximately $20,285 in PPP loan funds to Defendant Rhonda Thomas's personal Navy FCU bank account ending in 8763.

102.    The investigation has revealed that the employee information submitted by Defendant Rhonda Thomas for Application-12 to Lender-1 was fraudulent.  SSA and IRS records show that ABC reported paying no wages for the periods between 2018 and 2020.  Further, IRS records show that Defendant Rhonda Thomas did not file a tax return or Schedule C reporting wages earned for the tax years 2018 and 2019.  Further, a SSA Summary Earnings Records Query of Defendant Rhonda Thomas from January 21, 2021 revealed that Defendant Rhonda Thomas had no reported earnings posted after 2016.

### m. Application-13

103.    On May 5, 2020, Defendant Rhonda Thomas applied for a PPP loan ("Application-13") from a participating financial institution ("Lender-1") on behalf of All Dolled Up Beauty Bar ("All Dolled Up").  The name on the application was Defendant Rhonda Thomas.  Defendant Rhonda Thomas was identified as the 100% owner of All Dolled Up.

104.    Application-13 stated that All Dolled Up had one employee and did not specify an average monthly payroll.  Application-13 included a purported 2019 Form Schedule C, Profit or Loss From Business, identifying Defendant Rhonda Thomas as the proprietor.  The Form Schedule C listed $120,023 in income from gross receipts or sales.

105.    Application-13 included a 2019 Form 1099-MISC, Miscellaneous Income, from All Season Property Maintenance LLC to All Dolled Up?.  The reported nonemployee compensation from All Season Property Maintenance LLC All Season Property Maintenance LLC to All Dolled Up? was $116,023.

106.    Application-13 was declined by Lender-1 after additional requested information was not produced by Defendant Rhonda Thomas.  Lender-1 sent

notices regarding Application-13 to the physical address on file, Defendant Rhonda Thomas, All Dolled Up Beauty Bar.

107.   The investigation has revealed that the employee information submitted by Thomas for Application-13 to Lender-1 was fraudulent.  SSA and IRS records show that All Dolled Up reported paying no wages for the periods between 2018 and 2020.  Further, IRS records show that Defendant Rhonda Thomas did not file a tax return or Schedule C reporting wages earned for the tax years 2018 and 2019.  Further, a SSA Summary Earnings Records Query of Defendant Rhonda Thomas from January 21, 2021 revealed that Defendant Rhonda Thomas had no reported earnings posted after 2016.

### n. Application-14

108.   On May 7, 2020, Defendant Rhonda Thomas applied for a PPP loan ("Application-14") from a participating financial institution ("Lender-1") on behalf of Aplus Property Maintenance LLC ("APlus").  Defendant Rhonda Thomas was identified as the 40% owner of APlus.  The home address in Concord, North Carolina and the business address was Defendant Rhonda Thomas' address in Sicklerville, New Jersey (Suite 6).

109.   Application-14 stated that Aplus had two employees and a monthly average payroll of $16,000.  The requested loan amount was $40,000.

110.   Application-14 was declined by Lender-1 after additional requested information was not produced by Defendant Rhonda Thomas.  Lender-1 sent notices regarding Application-14 to the physical address on file, Defendant Rhonda Thomas, Aplus Property Maintenance, Defendant Rhonda Thomas' address in Sicklerville, New Jersey.

111.   The investigation has revealed that the employee information submitted by Defendant Rhonda Thomas for Application-14 to Lender-1 was fraudulent.  SSA and IRS records show that APlus reported paying no wages for the periods between 2018 and 2020.

### o. Application-15, Application-16, and Application-17

112.   On an unknown date, Defendant Rhonda Thomas applied for a PPP loan ("Application-15") from a participating financial institution ("Lender-1") on behalf of Kings Lounge.  Defendant Rhonda Thomas was identified as the 100% owner of Kings Lounge.  The home address listed on Application-17 was Defendant Rhonda Thomas' address in Sicklerville, New Jersey (A) and the business address was Defendant Rhonda Thomas' address in Sicklerville, New Jersey (Suite E).

19

113.   Application-15 stated that Kings Lounge had 10 employees and did not provide a monthly average payroll.

114.   On June 12, 2020, Defendant Rhonda Thomas applied for a PPP loan ("Application-16") from a participating financial institution ("Lender-1") on behalf of Kings Lounge.  Defendant Rhonda Thomas was identified as the 100% owner of Kings Lounge.  The home address listed on Application-17 was Defendant Rhonda Thomas' address in Sicklerville, New Jersey (A) and the business address was Defendant Rhonda Thomas' address in Sicklerville, New Jersey (Suite E).

115.   Application-16 stated that indicated Kings Lounge had 10 employees and a did not provide a monthly average payroll.

116.   On June 15, 2020, Defendant Rhonda Thomas applied for a PPP loan ("Application-17") from a participating financial institution ("Lender-1") on behalf of Kings Lounge.  Defendant Rhonda Thomas was identified as the 100% owner of Kings Lounge.  The home address listed on Application-17 was Defendant Rhonda Thomas' address in Sicklerville, New Jersey (A) and the business address was Defendant Rhonda Thomas' address in Sicklerville, New Jersey (Suite E).

117.   Application-17 stated that Kings Lounge had 10 employees and a monthly average payroll of $81,670, and the stated purpose of the loan was for payroll and lease/mortgage interest payments.  Defendant Rhonda Thomas certified that: 1) "The applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Forms(s) 1099-MISC" and 2) "The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under the paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposed, the federal government may hold me legally liable, such as for such charges as fraud."  Defendant Rhonda Thomas electronically signed her name certifying the application

118.   As part of Application-17, a BOA checking bank account statement was submitted bearing the name of Defendant Rhonda Thomas/Kings Lounge, ending in 2825 with address of Defendant Rhonda Thomas in Sicklerville, New Jersey.  The statement date was from May 9, 2020 through June 10, 2020.  The investigation has revealed that the BOA bank account number ending in 2825 is a personal account in the name of Defendant Rhonda Thomas bearing an address in Concord, North Carolina, and not a business account for Defendant Rhonda Thomas/Kings Lounge with a New Jersey address.  The font used for

20

the Defendant Rhonda Thomas/Kings Lounge name and address on the BOA bank statement submitted with the application was different than the original bank account statement.

119.   Application-17 also included a purported 2019 Form 940 in the name of Kings Lounge, at Defedant Rhonda Thomas' address in Sicklerville, New Jersey.  The total payments paid to all employees was reported was $980,000.  Defendant Rhonda Thomas signed the Form 940 as "Management" on January 15, 2020.

120.   Application-17 was approved in the amount of $204,175.  However, Lender-1 submitted the loan file for fraud review because of the font and formatting discrepancies in the BOA bank statement and the loan proceeds were never disbursed.

121.   The investigation has revealed that the employee information submitted by Thomas to Lender-1 on Application-15, Application-16, and Application-17 was fraudulent.  SSA and IRS records show that King Lounge reported paying no wages for the periods between 2018 and 2020.

### p. Application-18

122.   On June 11, 2020, CC-3 applied for a PPP loan ("Application-18") from a participating financial institution ("Lender-1") on behalf of Business #2. Business #2 reported two employees and an average monthly payroll of $16,416.  The stated purpose of the loan was for payroll, lease, mortgage interest, and utilities.

123.   Subscriber information provided by Google for the email account associated with Application-18 shows that the email account was created on June 11, 2020 using Hotel 1's IP Address 50.239.187.214 on a date when Rhonda Thomas was a registered guest of Hotel 1.

124.   Application-18 also included a purported 2019 Form 940 in the name of Business #2, Pennsauken, New Jersey.  The total payments paid to all employees was reported was $197,000.  CC-3 signed the Form 940 as "Management" on January 05, 2020.  The signature date, January 15, 2020, is the same date that Rhonda Thomas purportedly signed a Form 940 on behalf of Kings Lounge.

125.   Application-18 was signed by CC-3 under penalty of perjury and was submitted using Hotel 1's IP Address 50.239.187.214 on a date when Rhonda Thomas was a registered guest of Hotel 1.

126.  On or about June 12, 2020, Business #2 was approved for a PPP loan in the amount of $41,040 ("Loan-10").  On June 15, 2020, a $10,000 check from Business #2 made payable to 2 Kings Group, with memo "Payroll," was deposited into the 2 Kings Group Bank of America account ending in 1861, which is controlled by Rhonda Thomas.  On June 16, 2020, a $11,000 check from Business #2 made payable to Rhonda Thomas, with memo "Payroll For June," was deposited into Rhonda Thomas's Navy FCU bank account ending in 8763.

127.  The investigation has revealed that the employee information submitted for Application-18 to Lender-1 was fraudulent.  SSA and IRS records show that Business #2 reported paying no wages for the periods between 2018 and 2020.

### q. Application-19

128.  On August 05, 2020, CC-3 applied for an EIDL loan ("Application-19") from the SBA on behalf of Business #2.  CC-3 was identified as the 100% owner of Business #2.

129.  Application-19 stated that Business #2 had 3 employees, gross revenues of $254,971 for the 12 months prior to the disaster, and cost of goods sold of $36,250 for the 12 months prior to the disaster.

130.  On August 6, 2020, Application-19 was approved ("Loan-11").  SBA disbursed approximately $109,300 in EIDL funds.  SBA was provided documentation identifying Navy FCU checking account ending in 4879 as the financial instution used by Business #2.

131.  The investigation has revealed that the employee information submitted by CC-3 to the SBA for Application-19 was fraudulent.  SSA and IRS records show that Business #2 reported paying no wages for the periods between 2018 and 2020.

### r. Application-20

132.  On July 26, 2020, CC-2 applied for a PPP loan ("Application 18") from a participating financial institution ("Lender-5") on behalf of Business #1.

133.  Business #1 reported 17 employees and an average monthly payroll of $145,000.  The stated purpose of the loan was for payroll, lease/mortgage interest, and utilities.  On Application-20, Business #1 used business employer identification number ("EIN") XX-XXX7743.  Investigators have determined that

XX-XXX7743 is assigned to a company ("Company #1") in Galloway, New Jersey. CC-2 is the sole managing member of Company #1.

134. Application-20 also included a purported 2019 Form 940 in the name of Business #1, Galloway, New Jersey. The total payments paid to all employees was reported as $1,728,000. CC-2 signed the Form 940 as "Management" on January 15, 2020. The signature date, January 15, 2020, is the same date that Defendant Rhonda Thomas purportedly signed a Form 940 on behalf of Kings Lounge.

135. Between July 26, 2020 and February 08, 2021, IP Address 174.57.122.227 was used to log in to Lender-5's client portal for Application-20. The logins were from mobile and desktop devices. In particular, on July 26, 2020, IP address 174.57.122.227 was used for an "application_submitted_email_notification" according to Lender-5's records.

136. Investigators have learned that from May 26, 2020 through at least December 16, 2020, IP Address 174.57.122.227 was assigned to Kings Group at Defendant Rhonda Thoms' home address in Sicklerville, New Jersey.

137. On July 27, 2020, Lender-5 approved Business #1 for a PPP loan in the amount of $362,500 ("Loan-12"). On July 29, 2020, a $108,750 cashier's check from Business #1 made payable to Kings Group LLC was deposited into the 2 Kings' Fulton Bank account ending in 8596 that was controlled by Rhonda Thomas.

138. From February 2, 2021 through February 5, 2021, IP address 174.57.122.227 was used by mobile and desktop devices to log in to Lender-5's client portal for what appears to be a PPP second draw application request for Business #1. On February 5, 2021, a letter was emailed to Business #1's email account stating that the second draw application was declined for "unable to verify Applicant's payroll or loan amount based on documents or information submitted."

139. The investigation has revealed that the employee information submitted for Application-20 to Lender-5 was fraudulent. SSA records show that neither Business #1 nor Company #1 reported paying any wages for the periods between 2018 and 2020, and IRS records show that Business #1 did not report paying wages for the periods between 2018 and 2020.

### s. Application-21

140. On July 13, 2020, CC-4 applied for a PPP loan ("Application-21") from a participating financial institution ("Lender-5") on behalf of Business #3.

Business #3 reported five employees and an average monthly payroll of $50,000. The stated purpose of the loan was for payroll, lease, and mortgage interest.

141. Application-21 also included a purported 2019 Form 940 in the name of Business #3, in Philadelphia, Pennsylvania 19149. The total payments paid to all employees was reported was $520,000. CC-4 signed the Form 940 as "Management" on January 15, 2020. The signature date, January 15, 2020, is the same date that Rhonda Thomas purportedly signed a Form 940 on behalf of Kings Lounge.

142. Prior to Application-21, two previous applications filed on behalf of Business #3. On June 28, 2020, the first application was filed using Hotel 1's IP address 50.239.187.214 during the time period when Defendant Rhonda Thomas was a registered guest. The June 28, 2020 application was canceled. On July 5, 2020, a second application was filed on behalf of CC-4, using IP address 174.57.122.227, which was then assigned to Kings Group at Defendant Rhonda Thomas' address in Sicklerville, New Jersey. On July 6, 2020, the July 5, 2020 application was rejected because Lender-5 was unable to validate information on the application.

143. On July 15, 2020, Lender-5 approved CC-4 for a PPP loan in the amount of $125,000 ("Loan-13"). On July 22, 2020, a $25,000 check from Business #3 made payable to Kings Group LLC was deposited into the 2 Kings Fulton Bank account ending in 8596 that was controlled by Defendant Rhonda Thomas.

144. The investigation has revealed that the employee information submitted for Application-21 to Lender-5 was fraudulent. SSA and IRS records show that CC-4 reported paying no wages for the periods between 2018 and 2020.

145. The following chart summarizes the PPP and EIDL applications and loans discussed in this affidavit:

| Application # | Loan # | Loan Type | Company | Amount Disbursed |
|---|---|---|---|---|
| Application-1 | N/A | PPP | Prime Asset | N/A |
| Application-2 | Loan-1 | PPP | Prime Asset | $360,000 |
| Application-3 | Loan-2 | EIDL | Prime Asset | $150,000 |
| Application-4 | N/A | PPP | Rich Bloodline | N/A |

| Application # | Loan # | Loan Type | Company | Amount Disbursed |
|---|---|---|---|---|
| Application-5 | N/A | EIDL | Rich Bloodline | N/A |
| Application-6 | Loan-3 | PPP | 2 Kings | $20,265 |
| Application-7 | Loan-4 | EIDL | 2 Kings | $31,900 |
| Application-8 | Loan-5 | PPP | Credit Repair | $19,243 |
| Application-9 | Loan-6 | EIDL | Credit Repair | $9,500 |
| Application-10 | Loan-7 | PPP | Partners | $22,657 |
| Application-11 | Loan-8 | EIDL | Partners | $149,900 |
| Application-12 | Loan-9 | PPP | ABC | $20,285 |
| Application-13 | N/A | PPP | All Dolled Up | N/A |
| Application-14 | N/A | PPP | APlus | N/A |
| Application-15 | N/A | PPP | Kings Lounge | N/A |
| Application-16 | N/A | PPP | Kings Lounge | N/A |
| Application-17 | N/A | PPP | Kings Lounge | N/A |
| Application-18 | Loan-10 | PPP | Business #2 | $41,040 |
| Application-19 | Loan-11 | EIDL | Business #2 | $109,300 |
| Application-20 | Loan-12 | PPP | Business #1 | $362,500 |
| Application-21 | Loan-13 | PPP | Business #3 | $125,000 |
| **Total** | | | | **$1,421,590** |

B. Pandemic Unemployment Assistance ("PUA") Program Scheme

146.  Beginning in December 2020, law enforcement began an investigation into a group of approximately 74 suspected fraudulent Unemployment Insurance claims associated with Defendant Stephen Bennett's address in Berlin, New Jersey and Defendant Stephen Bennett's address in Philadelphia, Pennsylvania.  As detailed below, the investigation has uncovered a scheme by Defendant Stephen Bennett and others to defraud the Unemployment Insurance program.

147.  Records provided by PA-DOL show that between June 2020 and July 2020, approximately 74 UI claims were submitted via the Portal to PA-DOL, each having a mailing address of either Defendant Stephen Bennett's address in Berlin, New Jersey or Defendant Stephen Bennett's address in Philadelphia, Pennsylvania.  Records show approximately 58 claims were filed using the address of Defendant Stephen Bennett's address in Berlin, New Jersey and approximately 16 claims were filed using variations of Defendant Stephen Bennett's address in Philadelphia, Pennsylvania. According to PA-DOL records, over $412,000 in UIB funds were paid on these 74 claims.

25

148.   The UI claims were made in the names of different individuals.  The claims included detailed personal identifying information, including the residential addresses and social security numbers of the purported claimants. The claims stated that each applicant was self-employed and was unemployed as a result of COVID-19.

149.   Approximately 28 of the UI claims linked to Defendant Stephen Bennett's address in Berlin, New Jersey and Defendant Stephen Bennett's address in Philadelphia, Pennsylvania were paid using US Bank debit cards. Records from PA DOL and US Bank show that approximately 19 debit cards were mailed to Defendant Stephen Bennett's address in Berlin, New Jersey and that approximately 9 debit cards were mailed to Defendant Stephen Bennett's address in Philadelphia, Pennsylvania (or variations of Defendant Stephen Bennett's address in Philadelphia, Pennsylvania).

150.   Further investigation into the US Bank debit cards issued by PA DOL has revealed that they were used to withdraw money at ATMs, including ATMs located near Defendant Stephen Bennett's address in Berlin, New Jersey and Defendant Stephen Bennett's address in Philadelphia, Pennsylvania in July 2020 and August 2020.

(Continued on the next page)

151.  In addition to the debit cards, approximately 8 of the UI claims linked to Defendant Stephen Bennett's address in Berlin, New Jersey and Defendant Stephen Bennett's address in Philadelphia, Pennsylvania were paid using 15 checks from the Commonwealth of Pennsylvania Unemployment Compensation Benefit Account.  The 15 checks were deposited into Stephen Bennett's personal Navy FCU bank checking account, ending in 1770.  The checks were made payable in the names of others and none were made payable to Stephen Bennett.  Of the 15 checks, 9 checks were addressed to Defendant Stephen Bennett's address in Berlin, New Jersey and 6 were addressed to Defendant Stephen Bennett's address in Philadelphia, Pennsylvania.


Nicholas Henry
FBI Special Agent


FBI Special Agent Nicholas Henry attested to this Affidavit by telephone pursuant to FRCP 4.1(b)(2)(A) on this ____ day of May, 2021.


HONORABLE KAREN M. WILLIAMS
United States Magistrate Judge


27